THOMAS CARTMELL, ADMINISTRATOR OF MARGARET CART-
MELL, DECEASED,

*vs.*

JOSEPH PERKINS.

*New Castle, Feb. T.* 1845.

A legacy charged upon land was bequeathed to a married woman, subject to the deduction of a book account held by the testator against her. The testator held a note of the legatee's husband, but no reference to this note was made in the bequest. The husband also became indebted to the executor of the testator for goods purchased at a vendue of the personal estate. The husband died before the wife, without having reduced the legacy into his possession and without any settlement with the executor touching the same or his own indebtedness to the estate of the testator. *Held,* that on a bill filed by the administrator of the wife (who had survived her husband and died) to recover the legacy from the devisee of the land charged, the husband's indebtedness to the estate of the testator could not be treated as payment of the legacy.

The mere omission of a husband to reduce his wife's *chose in action* into his possession, for a lapse of time ordinarily sufficient to raise a presumption of payment, does not raise such presumption, so as to bar the wife's right, by survivorship, to recover such *chose in action* after the husband's death.

Lapse of time does not bar a *direct* trust as between the trustee and *cestui que trust;* otherwise, as to *constructive* trusts.

A legacy charged upon land, and payable by the devisee of the land, is a trust. falling within the exclusive jurisdiction of courts of equity, and as such is not subject to the equitable defence of lapse of time, by analogy to the Statute of Limitations; otherwise, of a legacy payable by the executor or administrator out of the personal estate, and which is recoverable both at law and in equity.

BILL IN EQUITY FOR A LEGACY CHARGED ON LAND.—Caleb Perkins, by his last will and testament, dated May 24th, 1804, bequeathed to his daughter Margaret, then the wife

of Thomas Cartmell, the sum of £100, subject to the deduction of such book account as the testator might have against her at his decease—the legacy to be paid to her, within three years after the testator's decease, by his son Joseph Perkins, to whom he had devised certain real estate charged with its payment. No question in this case arose as to the construction of the will. Thomas Cartmell and his wife Margaret survived the testator. Afterward, on the 9th of January, 1838, Cartmell died. The wife, surviving him, died on the 24th of December, 1841; and letters of administration upon her estate were granted to her son, Thomas Cartmell, the complainant. The bill is filed by him, as the representative of Margaret Cartmell, to recover the legacy from Joseph Perkins, the devisee of the land charged therewith.

The answer of the defendant, admitting the bequest of the legacy and that it was a charge upon the lands devised to the defendant, set up two defences. One was payment or satisfaction of the legacy, resulting in part from a note for £45 due from Cartmell, the husband of the legatee, to the testator in his lifetime—in part from a debt due from Cartmell to the executor of the testator for goods purchased at a vendue; and against the residue of the legacy the answer claimed, under the terms of the bequest, to set a book account left by the testator against the legatee, Margaret Cartmell, to the amount of £50 5s. The other defence was the lapse of time, as raising a presumption of payment, by analogy to the Satute of Limitations, the benefit of which defence the answer prayed, as if the same had been pleaded.

The cause was put at issue and depositions taken. The only material facts proved were that the complainant called on the defendant, before the filing of the bill, to examine the testator's books and come to a settlement; that there was a charge on the books of £11 5s. against

Margaret Cartmell; and the defendant showed a note of Thomas Cartmell, deceased, to the testator for £45 5s; also a vendue list, containing articles purchased at the vendue by Thomas Cartmell amounting to $36, which defendant said were the only charges he had against Thomas Cartmell, deceased, or his wife; and that defendant declined a reference.

The cause came before the Chancellor, at the March Term 1845, for a hearing upon the bill, answer, exhibits and depositions.

*E. W. Gilpin* for the complainant.

*W. H. Rogers* for the defendant.

Johns, Jr., Chancellor.—The circumstances of this case render it necessary to ascertain whether the trust under the will has been executed by the devisee of the land charged, as directed by the testator, the author of the trust; and whether the trustee's liability to account in a court of equity has ever been discharged. This I so consider, because there is no proof of any settlement with the husband in his lifetime, nor any evidence tending to show his assent to the appropriation of the legacy to extinguish his own indebtedness to the testator's estate; and the note or evidence of that indebtedness remained in the possession of Thomas Perkins, the executor, not cancelled nor delivered up.

The legacy to the daughter, being charged on the farm devised to his son, and being given subject to no other deduction than the charges on the testator's books against the daughter, the attempt of the son to pay the same by deducting the husband's debts appears to me contrary to the intention of the testator; and further, it explains the delay and omission of the husband to adopt adversary proceedings for its recovery in his lifetime.

The legacy being a *chose in action*, or a right of the wife only to be divested by an affirmative act of the husband—, she being the *cestui que trust* and the interest such as would belong to her, she surviving her husband, and would go to her executors; therefore, on his death, unless her right has been divested by some act of the husband, it appears to me contrary to principle to apply the doctrine of presumption to such a case; for such an application of it would defeat the wife's right by survivorship to all her *choses in action* whenever she was so fortunate as to enjoy a long state of coverture. Such a doctrine has never been sanctioned, either in law or equity; for the legal maxim is that *presumptio juris nemini facit injuriam.* Nor do we find any such effect on her rights by the Statute of Limitations. The period of coverture, as to her, is one of disability; and her rights are protected until she becomes *sui juris* and capable of enforcing them. It will not do to apply the doctrine of presumption and conclude the wife thereby, when surviving, simply because the husband has the legal right to receive payment or to collect by suit. For the husband has this right, if he chooses to exercise it, in relation to all her *choses in action;* and, therefore, from the lapse of time during coverture, payment to him must be presumed exclusive of proof of actual payment the necessary consequence must follow, that after twenty years coverture, on surviving her husband, she is deprived of all her rights, and moreover excluded from the saving clauses in the various acts of limitation.

I shall now proceed to explain why I do not regard the case as subject to the equitable doctrine of presumption, when considered with reference to the rule as established by equity decisions; and I shall also explain the reason why I now am compelled by the same authority to exclude it from the rule as drawn from the Statute of Limitations by analogy.

Before entering upon this branch of the case I would refer to the decision of Lord Hardwicke in *Garforth v. Bradley*, 2 *Ves. Sr.* 675, as settling the right of the wife surviving, and of her executors, to a legacy given to her whilst covert.

The case before me is that of a direct trust, being a devise of land by a father to his son, charged with the payment thereout of a sum of money to his daughter, she being covert; and, in this case, the son yet living and the owner and possessor of the land, under the father's will, as against the personal representative of the deceased sister, who survived her husband, he relies on the equitable doctrine that from the lapse of time this Court is bound to presume payment.

In the case of *Duvcouche vs. Savetier*, 3 *John. Ch. Rep.* 216, Chancellor Kent says, " All the cases admit that no time bars a direct trust, as between trustee and *cestui que trust.* The settled rule is, (and so it was recently declared in *Cholmondeley vs. Clinton*, 2 *Mer. Rep.* 360,) that, so long as a trust subsists, the right of a *cestui que trust* cannot be barred by the length of time during which he has been out of possession, and that he can only be barred by barring and excluding the estate of the trustee." This general rule applies to the present case; for the devisee of the land charged is a trustee, to the extent of the sum charged and payable out of the land, and the claim is made by the personal representative of the *cestui que trust.*

There is a class of cases which admit a reasonable time to be a bar; but these are cases in which a party is turned into a trustee by matter of evidence merely, and who took possession originally in his own right and was *prima facie* the owner. Thus in *Bonney vs. Ridgard*, 1 *Cox R.* 145, *cited and approved in* 4 *Bro. Ch. Rep.* 130; 17 *Ves. Jr.* 97, 165, the fraudulent purchaser of a leasehold estate from an executor was not permitted by Lord Kenyon to be

turned into a trustee for the children of the testator, in consequence of the great lapse of time between the purchase and the filing of the bill. So, in the cases of *Andrew vs. Wrigley, and Beckford vs. Wade,* 4 *Bro. Ch. Rep.* 125 ; 17 *Ves.* 87, the suits were brought to avoid purchases on the ground of fraud, and to turn them into trustees by construction ; and the Court held, that, in these cases of a possible, eventual trust, depending upon proof, length of possession was and ought to be a bar, upon the principle of the Statute of Limitations. But these cases have no relation to suits against the very trustee by the *cestui que trust* or his personal representative. The above cases are sufficient to illustrate the rule of equity relative to the doctrine of presumption from lapse of time, as will be apparent in all in which it has been applied.

It being manifest that the rule of presumption, as stated by Chancellor Kent in the case referred to, is sustained by all the equity decisions ; and, therefore, that it cannot be applied to the present suit, I shall now proceed to consider the manner in which equity applies by analogy the Statute of Limitations. For it is well settled that the Statute of Limitations is a good plea in equity, as well as at law. This has been the uniformly acknowledged doctrine of a court of equity ever since the statute of James I.

" The great and marked exception to this ordinary application of the statute to equity cases," Chancellor Kent remarks, in *Kane vs. Bloodgood,* 7 *Johns. Ch. Rep.* 113, " exists in the matter of trusts falling exclusively within equity jurisdiction." The first case, defining with precision a trust not affected by the statutes, was that of *Lockey vs. Lockey,* decided by Lord Macclesfield in 1719, *Prec. in Ch.* 518. The doctrine of this case is that the trusts which are not within the Statute are those which are creatures of the court of equity, and not within the cognizance of a court of law (*See* 2 *Mer. Rep.,* 360) " that

so long as the trust subsisted, so long it was impossible that the *cestui que trust* could be barred." "The *cestui que trust* could only be barred by barring and excluding the estate of the trustee."

It is a general rule in the books, that there is no statute of limitations to a charge upon an estate. Thus, in *Collins vs. Goodall*, 2 *Vern.* 235, the Statute was pleaded to a bill for rent charged on land by will; and it was held that it did not apply. Hence, in the modern case of *Stackhouse vs. Barniston*, 10 *Ves. Jr.* 453, the Master of the Rolls said that in equity the Statute is never permitted to prevail against a legal rent charge. And in *Norton vs. Turvill*, 2 *P. Wms.* 144, a wife, before marriage, had conveyed her estate in trust to her separate use, and during coverture had borrowed money on bond. The bond was held void; and after her death a bill was filed against her husband and her executors. The Master of the Rolls held that her separate estate was a trust estate for the payment of debts; and, speaking in reference to that trust, he said a trust was not within the Statute of Limitations. These cases of charges upon land support the distinction, which is the prevailing one, that the trusts upon which the Statute does not operate are those trusts of which equity has the proper and exclusive cognizance. In the case of *Kane vs. Bloodgood*, Chancellor Kent remarks that he takes it for granted as the assumed and settled doctrine, that an action at law will not lie in the case of a mere charge upon land, where there is no personal undertaking.

The application of the Statute by analogy cannot well be made to those peculiar trusts which are the mere creatures of equity; for there is no ground for comparison; but when the same subject matter of demand in equity can also be made the subject of an action at law the rule of analogy applies in all its force. As Lord Redesdale observed in *Bond vs. Hopkins*, 1 *Sch. & Lef.* 413, the Statute

of Limitations. does not apply in terms to proceedings in courts of equity, but equitable titles are affected by analogy to it. In *Hovenden vs. Lord Annesly*, 2 *Sch. & Lef.* 607, Lord Redesdale went much more at large into the doctrine of the limitation of suits in equity ; and the principle of that case is, that where the party has a legal, as well as an equitable remedy, for the same cause of action, if the equitable title be not acted on in the same time the legal title should be, it is barred. This is the principle that pervades the cases.

If, in the present case, the legacy had been payable by the executor out of the personal assets, then, the jurisdiction in the courts of common law and courts of equity upon such a cause of action being concurrent, the analogy would exist and the statute would be a bar. For, by the act in *Dig. Del. Laws*, 228, " an action of assumpsit may be maintained against an executor or administrator for a legacy or a distributive share. Assets in the hands of an executor or administrator to pay a legacy shall create a legal liability and raise a consequent promise to pay. This action shall not lie for a legacy which is either directly or by implication the subject of a trust." But this case belongs exclusively to a court of equity ; for the legacy being a sum charged on and payable out of land, and therefore a direct trust, it is expressly excluded by our Act of Assembly from the jurisdiction of a court of common law ; and, it must, therefore, be subject to the rule of equity excluding it from the operation of the Statute of Limitations.

Before concluding this branch of the case I will only add, in support of the opinion I have expressed, what was said by Chief Justice Spencer, in 20 *Johns. Rep.* 576, 610, who, after adverting with approbation to the opinion of Lord Hardwicke in *Sturt vs. Melish*, 2 *Atk.* 610, and showing that the plaintiff had ample

remedy at law, observed, "I have therefore no hesitation in saying that, in a case where there is a concurrent jurisdiction in the courts of common law and equity, the rule must be the same, and the Statute of Limitations may be pleaded, with the same effect in one court as in the other. In the case of trust and fraud, peculiarly, appropriately and exclusively the objects of equity jurisdiction, according to the established doctrine, the Statute cannot be pleaded."

The defendant in the present case, not being entitled to avail himself of any benefit from the Statute of Limitations, and not being embraced within the rule of presumption from lapse of time, and having, as appears from the answer and exhibits in the cause, not accounted for or paid the legacy, according to the mode specially directed by the testator, must be held still bound in equity for the legacy. I must, therefore, make an interlocutory decree for an account.

Decree reversed by the Court of Errors and Appeals, at the June Term 1845. 4 *Harrington's Rep.* 270.